

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| ANTHONY GREGG, *in his individual capacity*, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:22-01218-MGL |
| | § | |
| AMERICAN COLLEGE OF MEDICAL | § | |
| GENETICS AND GENOMICS, *an Illinois non-* | § | |
| *profit corporation*; MARC WILLIAMS, *in his* | § | |
| *individual capacity*; MAXIMILIAN MUENKE, | § | |
| *in his individual capacity*; and THE ACMG | § | |
| FOUNDATION FOR GENETIC AND | § | |
| GENOMIC MEDICINE, *an Illinois non-profit* | § | |
| *Corporation*, | § | |
| Defendants. | § | |

---

**MEMORANDUM OPINION AND ORDER
DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

---

## I.    INTRODUCTION

Plaintiff Anthony Gregg (Gregg) brings this action against Defendants American College of Medical Genetics and Genomics (ACMG), Marc Williams (Williams), Maximilian Muenke (Muenke), and the ACMG Foundation for Genetic and Genomic Medicine (the Foundation) (collectively, Defendants). In Gregg's amended complaint, he alleges state law causes of action against Defendants for breach of contract, defamation, defamation by implication, false light, and intentional infliction of emotional distress. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court is Williams and Muenke's (collectively, Individual Defendants) motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Individual Defendants' motion will be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

This case arises out of comments Gregg made at ACMG's Annual Meeting while serving as its president.

The Annual Meeting was held virtually.  Gregg participated from his home in South Carolina.  During one of the sessions, Gregg hosted a question-and-answer portion in which he stated, among other things, that "prenatal carrier screening should include 'black people, brown people, and yellow people.'"  Amended Complaint ¶ 72 (quoting Gregg's Comments at the Annual Meeting).  Audience members immediately raised concerns about the language Gregg used.

After the session, but before the Annual Meeting concluded, Williams, the incoming president of ACMG, evidently spoke with Gregg, who indicated he planned to resign, which Williams encouraged him not to do. Williams "offered to Dr. Gregg the opportunity to apologize, and he declined."  Williams Declaration ¶ 8.  Williams asked Gregg for "permission to issue a statement on behalf of the ACMG, and he agreed."  *Id.* ¶ 9.

As a result, ACMG uploaded a video statement addressing the concerns.  The video featured Individual Defendants.  Williams filmed his portion of the statement in Wisconsin, where he resides, and Muenke, the Chief Executive Officer of ACMG and the Foundation, filmed his in Maryland, where he resides.

Gregg subsequently resigned from ACMG.  Later, ACMG published a written press release, which Williams and Muenke wrote and signed.  Again, they did so from Wisconsin and Maryland, respectively.  Both the video statement and the press release were emailed to all Annual

Meeting attendees, ACMG's membership, and released on social media.  This appears to have included dissemination to some South Carolina residents.

After Gregg filed this suit, Individual Defendants moved to dismiss.  Gregg responded to the motion, and Individual Defendants replied.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.    STANDARD OF REVIEW

A defendant may bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Courts must make a separate personal jurisdiction determination as to each defendant who raises the issue.  *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

Once a defendant makes such a motion, the plaintiff bears the burden of establishing personal jurisdiction.  *Grayson v. Anderson*, 816 F.3d 262, 267–68 (4th Cir. 2016).  When the Court evaluates personal jurisdiction based solely upon the motion papers, affidavits, memoranda, and complaint, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion to dismiss.  *Id.* at 268.

The Court, in such an analysis, must take the relevant allegations and evidence in the light most favorable to the plaintiff.  *Id.* at 268.

Personal jurisdiction over an out-of-state defendant may be either general or specific.  "[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction.  *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

On the other hand, as to specific jurisdiction, the Court must perform a two-step analysis. The Court must first determine whether the forum state—here, South Carolina—long-arm statute provides a basis for asserting jurisdiction over the defendant. *Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir.1997). Then, the Court must determine that the exercise of personal jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id*.

South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

To evaluate the due process requirements for asserting personal jurisdiction, the Fourth Circuit has established a three-part test in which courts consider the following: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the forum state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citation omitted).

## IV.    DISCUSSION AND ANALYSIS

As neither Individual Defendant is domiciled in South Carolina, the Court cannot exercise general personal jurisdiction. The Court thus focuses its analysis on whether specific personal jurisdiction exists in this case.

4

### A.    *Whether Individual Defendants have minimum contacts with South Carolina from which Gregg's claim arises*

Individual Defendants insist they failed to engage in any activity purposely aimed toward South Carolina in their individual capacities, so they are not subject to personal jurisdiction in the state.  Gregg responds that the Court should consider actions taken in the Individual Defendants' personal capacities, and thus he has met his prima facie burden of showing purposeful availment.

For ease of analysis, the Court considers the first and second parts of the Fourth Circuit's test—the extent to which Individual Defendants purposefully availed themselves of the privilege of conducting activities in the forum state and whether the Gregg's claims arise out of those activities directed at the forum state—contemporaneously in this section.

Under the minimum contacts standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In other words, a defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"[U]nder the 'fiduciary shield' doctrine, as it has generally been phrased, the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1055–56 (4th Cir. 1983) (internal quotation marks omitted).  But, in states like South Carolina where the long arm statute is coextensive with the Due Process clause, the fiduciary shield doctrine is limited.  *Id.* at 1064.

> [W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state . . ., he is properly subject to the jurisdiction

of the forum court[.] . . . On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally.

*Id.* at 1064–65.  Thus, the Court must look to the actions of the Individual Defendants themselves, as opposed to the actions of ACMG and the Foundation.  But, the Court may consider actions taken in either the Individual Defendants' personal or official capacities.

The allegations against Individual Defendants rest on more than their positions as officers and employees of ACMG and/or the Foundation.  Gregg contends that they themselves took actions that harmed him—albeit in their official capacity—namely preparing the video statement and the press release.  In other words, it is their actions, not their titles, that give rise to Gregg's causes of action.  It is undisputed that Individual Defendants took all actions related to this lawsuit from their home states, outside of South Carolina.

The "in-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction."  *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019); *Calder v. Jones*, 465 U.S. 783 (1984)).  Under this "effects test," a plaintiff can establish specific jurisdiction by making a prima facie case that

(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*Consulting Eng'rs Corp.*, 561 F.3d at 280 (internal citations omitted).

Here, there are allegations that Individual Defendants committed an intentional tort, so the first element of the effects test is met.

The Court turns to the second element, whether the forum is the focal point of the harm. The brunt of the harm as to Gregg's intentional infliction of emotional distress claims occurred in

South Carolina.   And, it appears the reputational harm was also felt most strongly in South

Carolina, because Gregg's career is centered here, even if he is, according to the amended

complaint, "a nationally recognized leader in the medical practices of Obstetrics and Gynecology,

Maternal Fetal Medicine, and Clinical Genetics."   Amended Complaint ¶ 2. The Court thus

determines that Gregg has made a prima facie case that the focal point of the harm for each of his

causes of action is South Carolina.

Gregg points to *Calder* to support his contention that the third element, whether South

Carolina is the focal point of the alleged tortious activity, is met here.  465 U.S. 783.  In that case,

the Supreme Court held that a Florida-resident editor of a magazine with large circulation in

California was subject to personal jurisdiction in California.  *Id.* at 790.  The editor had been to

California only twice.  *Id.* at 786.  But, he edited and approved the allegedly libelous article, which

"concerned the California activities of a California resident.  It impugned the professionalism of

an entertainer whose television career was centered in California.  The article was drawn from

California sources, and the brunt of the harm, in terms both of respondent's emotional distress and

the injury to her professional reputation, was suffered in California."  *Id.* at 788–89.

Here, the video statement and the press release concerned South Carolina activities of a

South Carolina resident.   And, Individual Defendants knew Gregg was in South Carolina.

Although recipients of the video statement and the press release were located in many states, some

were located in South Carolina.

Moreover, Williams conferred with Gregg before releasing the video statement and the

press release.  Like in *Calder*, therefore, Individual Defendants interacted with the forum state to

prepare the allegedly defamatory statements.   Therefore, the Court concludes Gregg has

established the third element, that Individual Defendants "expressly aimed [their] tortious conduct

at the forum, such that the forum can be said to be the focal point of the tortious activity."
*Consulting Eng'rs Corp.*, 561 F.3d at 280.

Thus, Individual Defendants "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within [South Carolina][,]" *Hanson*, 357 U.S. at 253, "such that [they] should reasonably anticipate being haled into court []here[,]" *World–Wide Volkswagen Corp.*, 444 U.S. at 297. And, Gregg's claims arise out of Individual Defendants' contacts with the forum.

Therefore, the first two elements of the Fourth Circuit's test are thus met here. The Court must next consider whether the exercise of jurisdiction in this case "would comport with 'fair play and substantial justice'" such that it is constitutionally reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

### B.    *Whether jurisdiction is constitutionally reasonable*

Individual Defendants insist personal jurisdiction is constitutionally unreasonable because they have failed to invoke the benefits and protections of South Carolina. On the other hand, Gregg maintains the exercise of jurisdiction would allow effective and convenient relief.

In determining whether the exercise of jurisdiction is constitutionally reasonable, the Court evaluates

> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477).

After reviewing these factors, the Court finds that exercising specific personal jurisdiction fails to violate Individual Defendants' due process rights.

First, the burden on Individual Defendants of litigating in South Carolina is minimal.  All defendants, for example, are represented by the same attorneys, who are located in South Carolina.  Second, South Carolina has an interest in protecting the legal rights of its residents and discouraging future tort violations.  Third, Gregg has a strong interest in obtaining convenient relief in a common, accessible forum.

Fourth, there is an interstate interest in obtaining efficient resolution in a single forum, and litigating this case in South Carolina is in the interests of judicial economy.  The other defendants have failed to object to jurisdiction in this state, and South Carolina state law applies to the tort claims.  Fifth and finally, South Carolina has a substantial interest in cooperating with other states to provide a forum for efficiently litigating Gregg's cause of action to further fundamental substantive social policies.

Accordingly, the Court holds it is constitutionally reasonable to exercise personal jurisdiction over Individual Defendants.


V.    **CONCLUSION**

For the reasons stated above, it is the judgment of the Court Individual Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Signed this 1st day of February 2023, in Columbia, South Carolina.


s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE