

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ANTHONY GREGG, *in his individual capacity*, § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> AMERICAN COLLEGE OF MEDICAL § <br> GENETICS AND GENOMICS, *an Illinois non-* § <br> *profit corporation*; and the ACMG § <br> FOUNDATION FOR GENETIC AND § <br> GENOMIC MEDICINE, *an Illinois non-profit* § <br> *corporation*; and MARC WILLIAMS, *in his* § <br> *individual capacity*; and MAXIMILIAN § <br> MUENKE, *in his individual capacity*, § <br> Defendants. § | Civil Action No. 3:22-01218-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO
CERTIFY QUESTION TO THE SOUTH CAROLINA SUPREME COURT,
AND LIFTING STAY**

**I.    INTRODUCTION**

Plaintiff Anthony Gregg (Gregg) brings this action against Defendants American College of Medical Genetics and Genomics (ACMG), Marc Williams (Williams), Maximilian Muenke (Muenke), and the ACMG Foundation for Genetic and Genomic Medicine (the Foundation) (collectively, Defendants). In his amended complaint, Gregg alleges state law causes of action against Defendants for defamation, defamation by implication, false light, and intentional infliction of emotional distress (IIED) (collectively, the tort claims), as well as a breach of contract

claim against ACMG, Williams, and Muenke.  He requests treble damages and attorney fees.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court are Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) and Gregg's motion to certify a question to the South Carolina Supreme Court (motion to certify).  Having carefully considered the motions, the responses, the replies, the surreplies, the record, and the applicable law, it is the judgment of the Court Defendants' motion to dismiss will be granted in part and denied in part and Gregg's motion to certify will be dismissed without prejudice.  The Court will also lift the pending stay in this matter.

## II.     FACTUAL AND PROCEDURAL HISTORY

This case arises out of comments Gregg made at ACMG's 2021 Annual Meeting while serving as its President.

When Gregg became president, he executed a participation agreement as required by ACMG's bylaws, which included a hold harmless agreement.  As per the hold harmless agreement, Gregg agreed to "hold ACMG, and their officers, directors, members, employees and agents, harmless from any complaint, claim or damage arising out of or in connection with any attendance at, travel to, or participation in, any and all ACMG activities" including, but not limited to attending meetings and ACMG-related travel.  Participation Agreement at 28–29.

During one of the sessions at the Annual Meeting, Gregg hosted a question-and-answer portion in which he stated, among other things, that "prenatal carrier screening should include 'black people, brown people, and yellow people.'"  Amended Complaint ¶ 72. Audience members immediately raised concerns about the language Gregg used.

2

In response, ACMG uploaded a video statement addressing the concerns, entitled "ACMG CEO and Incoming President Address Racially Inappropriate Term Used in 2021 Meeting Session." *Id.* ¶ 80. The video featured Williams, ACMG's incoming president, and Muenke, ACMG's and the Foundation's Chief Executive Officer (CEO).

In the video, Muenke stated Gregg "used a term that was racially inappropriate and offensive. . . . [W]e do not condone the language used." *Id.* ¶ 83. Gregg subsequently resigned from ACMG.

Later, ACMG published a written press release, which Williams and Muenke wrote and signed. The written press release stated Gregg "used a racially inappropriate term in referring to diverse populations by 'colors' in an unscripted response. . . . It was a serious mistake that caused pain and distress for many, including ACMG leadership." Written Press Release at 1. The statement then went on to announce Gregg's resignation. It quoted Gregg's letter of resignation, which stated that he "misspoke" and that his "poor choice of words ignited social media." *Id.* (quoting Gregg's letter of resignation).

Both the video statement and the press release were emailed to all Annual Meeting attendees, ACMG's membership, and released on social media.

ACMG's bylaws allow the Board of Directors to "censure, suspend, expel, or otherwise discipline any member found to . . . be deficient in moral character . . . be guilty of professional misconduct, or . . . have acted in a manner prejudicial to the interests of [ACMG]." Bylaws at 23 § 8.2. The bylaws also set forth a set of disciplinary procedures, including reference to a three-person inquiry committee, "thorough and impartial consideration," a written report, notice to the member, and a vote. *Id.* § 8.3.

After Gregg filed this suit, Defendants filed this motion to dismiss. The Court stayed the matter pending resolution of the motion to dismiss. Gregg responded to the motion to dismiss, and also filed the motion to certify. Defendants thereafter replied to Gregg's response to the motion to dismiss and responded to the motion to certify. Gregg replied to Defendants' response to the motion to certify.

Subsequently, the Court directed Gregg to file a surreply regarding what state's law the Court should apply in analyzing the hold harmless clause in this case. Gregg did so. After that, Defendants sought leave to file an additional surreply on the same issue, which the Court granted. The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.     STANDARD OF REVIEW

#### A.     *Motion to Dismiss*

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). But, the Court need

not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 243.

### B.     Motion to Certify

The Court may certify a question of state law to the South Carolina Supreme Court when a case presents "a novel issue of local law which is determinative in the case before it." *Grattan v. Bd. of Sch. Comm'rs of Baltimore City*, 805 F.2d 1160, 1164 (4th Cir. 1986); *see also* S.C. App. Ct. R. 244(a) (stating the South Carolina Supreme Court may answer a certified question when "questions of law of this state . . . may be determinative of the cause then pending in the certifying court [and] it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.").

"Where there is no case law from the forum state which is directly on point, the district court [must] attempt[] to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). "[C]ooperative judicial federalism presumes federal and state courts alike are competent to apply federal and state law." *McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (internal quotation marks omitted). Whether to certify is "in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

## IV.     DISCUSSION AND ANALYSIS

### A.     Whether the Court should dismiss the amended complaint due to the hold harmless agreement

Defendants contend the Court should apply Illinois law and determine the hold harmless clause in Gregg's participation agreement bars his claims. On the other hand, Gregg posits the Court should apply South Carolina law and determine the hold harmless clause fails to preclude his lawsuit. But, both sides argue that either state's law would produce their desired result.

5

Under both South Carolina law and Illinois law, courts may decline to enforce exculpatory clauses if they are violative of public policy.  *See Lohman v. Morris*, 497 N.E.2d 143, 145 (Ill. App. Ct. 1986) ("As a general rule, exculpatory contracts are valid as long as they are not violative of public policy or there does not exist a unique relationship between the parties which militates against enforcement of the agreement."); *Pride v. S. Bell Tel. & Tel. Co.*, 138 S.E.2d 155, 157 (S.C. 1964) ("Since such provisions tend to induce a want of care, they are not favored by the law and will be strictly construed against the party relying thereon.  When considered valid, it is generally upon the ground that no considerations of public policy are present which would override the fundamental right of freedom of contract.").

The Court holds a determination of the validity of the hold harmless agreement presents issues, such as public policy considerations, better suited for summary judgment.

Accordingly, the Court will deny Defendants' motion to dismiss as to this ground.  And, at this stage of the proceedings, it need not decide which state's law to apply to the issue.  *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### B.      Whether the Court should dismiss all claims against the Foundation

Defendants argue Gregg has failed to allege any specific wrongdoing by the Foundation, and thus the Court should dismiss the causes of action alleged against it.  Gregg maintains the Foundation is legally responsible for Muenke's acts as CEO.

Gregg brings only his tort claims against the Foundation.  He alleges that Muenke, as CEO of the Foundation, spoke and acted on its behalf at all times relevant to this case.  Because Gregg has alleged wrongdoing of the Foundation through Muenke's actions, the Court refrains from

6

dismissing the Foundation as a party at this early stage of the case. *See Young v. F.D.I.C.*, 103 F.3d 1180, 1190 (4th Cir. 1997) ("A corporation may be held vicariously liable for such an intentional tort of its officer or agent if the officer or agent acted within the scope of his or her employment." (citing *Crittenden v. Thompson–Walker Co.*, 341 S.E.2d 385, 387–88 (S.C. Ct. App. 1986))).

    **C.**  ***Whether the Court should dismiss Gregg's defamation cause of action***

As a preliminary matter, the parties agree South Carolina law should apply to the tort claims. *See Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001) ("Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred.").

Under South Carolina law, the "elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001).

Defendants challenge only the first and second elements, so the Court focuses on those in this order.

      **1.**  ***Whether Gregg has alleged false statements of fact***

The first element of a defamation claim has two parts. First, the plaintiff must allege a false statement about another. *Id.* Defendants maintain each of the alleged statements underlying Gregg's defamation claim were either true or nonactionable opinions. Gregg insists he has alleged false statements of fact.

7

The statements that give rise to a defamation claim must be false. "Truth of the matter or substantial truth is a complete defense to a claim for defamation." *A Fisherman's Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 196 (4th Cir. 2002). Likewise, opinions that convey no statements of fact are nonactionable. *See Garrard v. Charleston Cnty. Sch. Dist.*, 838 S.E.2d 698, 713 (S.C. Ct. App. 2019) ("Under the First Amendment[,] there is no such thing as a false idea.").

The Court identifies three categories of statements that Gregg appears to allege constitute defamation: first, statements that Gregg made comments that were racially inappropriate, offensive, or insensitive; second, statements that the comments constituted a "serious mistake[,]" Written Press Release at 1; and third, statements that Gregg's comments "caused pain and distress for many[,]" *id.* The Court addresses the third category first.

The contention that Gregg's comments caused pain and distress is an assertion of fact. Although Gregg's allegations certainly admit that some were offended by the comments and that the comments "ignited social media[,]" *id.*, he fails to admit that such reactions rise to the level of pain and distress for many.

Thus, Gregg has stated a claim that Defendants made false statements of fact. The Court need not consider the other category of statements in this order. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta.*").

### 2.     *Whether Gregg has alleged the statements were defamatory*

The second part of the first element of a defamation claim is whether the plaintiff has alleged a defamatory statement about another. *Murray*, 542 S.E.2d at 748. Defendants maintain the alleged statements are not defamatory. Gregg insists they are defamatory *per se*.

A statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). Defamatory statements are either defamatory *per se* or defamatory *per quod*. *Parrish v. Allison*, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007).

A statement is defamatory *per se* if its defamatory meaning is clear from the statement standing alone. *Id.* at 389. On the other hand, if the reader or hearer of the statement must know additional facts or circumstances outside of the statement to understand its defamatory nature, then the statement is defamatory *per quod*. *Id.* "In cases involving defamation *per quod*, the plaintiff must introduce facts extrinsic to the statement itself in order to prove a defamatory meaning." *Holtzscheiter v. Thomson Newspapers*, Inc., 506 S.E.2d 497, 509 (S.C. 1998).

For the purposes of this order, the Court need not determine into which category the statements fall. Accusations of purportedly racially insensitive comments that "caused pain and distress for many[,]" Written Press Release at 1, "tend[ ] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Fleming*, 567 S.E.2d at 860.

Gregg has thus alleged sufficient facts in the amended complaint to plead that the alleged statements tended to harm his reputation, and were thus defamatory.

### 3. *Whether Gregg's failure to plead that Defendants' publication of the allegedly defamatory statements was unprivileged requires dismissal*

As to the second element of a defamation claim, Defendants contend Gregg failed to allege that the publication of the allegedly defamatory statements was unprivileged. Gregg fails to address this argument.

Under South Carolina law, publication—that is, communication—of a defamatory statement can be privileged or unprivileged. *Bell v. Bank of Abbeville*, 38 S.E.2d 641, 642–43

9

(S.C. 1946).  If publication is privileged, that privilege can provide a defense to a defamation cause of action.  *Id.* at 642.  To determine if a statement is privileged, the Court must consider, among other things, the relationship between the parties.  *Id.* at 643.

Gregg's amended complaint neglects to explicitly allege Defendants' publication of the defamatory statements were unprivileged.  But, under South Carolina law, privilege is an affirmative defense.  *See Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (S.C. 1999) ("In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege.").

Because Gregg alleges Defendants published the defamatory statement, his amended complaint suffices as to this element.  The Court need not consider any affirmative defense that the publication was unprivileged in this order.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss . . . generally cannot reach the merits of an affirmative defense . . . [unless] all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993) (emphasis omitted)).

Inasmuch as Gregg has satisfied the first two elements of a defamation claim, and Defendants fail to raise any issues as to the other two, the Court will therefore deny the motion to dismiss as to Gregg's defamation cause of action.

> D. *Whether the Court should dismiss Gregg's defamation by implication cause of action*

Defendants next posit that the Court should dismiss Gregg's defamation by implication claim because Gregg failed to plead an implied defamatory meaning through innuendo or implication.  Gregg insists Defendants' accusations of racial offense implied defamatory facts.

In addition to recovery for statements that are defamatory on their face, plaintiffs may also allege a statement is defamatory by way of innuendo or implication. *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012). "Innuendo is extrinsic evidence used to prove a statement's defamatory nature. It includes the aid of inducements, colloquialisms, and explanatory circumstances. *Id.* (quoting *Parrish*, 656 S.E.2d at 391 n. l).

In other words, "[t]o render the defamatory statement actionable, it is not necessary that the false charge be made in a direct, open and positive manner. A mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain." *Id.* (quoting *Tyler v. Macks Stores of S.C., Inc.*, 272 S.E.2d 633, 634 (S.C. 1980)).

Gregg argues that without context, Defendants' statement that he made racially insensitive comments caused speculation to run amok. He posits "[o]ne can imagine many words, including one nefarious slur in particular, that would fit the bill. Without a disclosure of the basis for the opinion, the viewer or reader is left to his imagination, and has no basis by which to make up his own mind." Dismissal Response at 15. In other words, without explaining what exactly Gregg said, he argues, Defendants implied much worse.

He has therefore alleged a statement that is impliedly defamatory. Because the elements of defamation by implication otherwise mirror the elements of defamation for the purposes of a motion to dismiss, the Court determines Gregg has stated a claim as to defamation by implication, and thus denies the motion to dismiss as to that cause of action.

### E.     *Whether the Court should dismiss Gregg's false light claim or whether the Court should certify a question to the South Carolina Supreme Court*

Defendants avouch the Court should dismiss Gregg's false light claim because no South Carolina state court has recognized the cause of action. Gregg contends the Court should either

certify a question to the South Carolina Supreme Court or allow the cause of action to move forward.

Multiple times, plaintiffs have presented courts in South Carolina with false light causes of action. Each time, the courts have noted that South Carolina has yet to recognize such a tort. *See, e.g.*, *Brown v. Pearson*, 483 S.E.2d 477, 484 (S.C. Ct. App. 1997) ("As to Appellants' claim of 'false light,' no South Carolina case has recognized this tort."); *see also Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 673 (S.C. 2006) (recognizing South Carolina has recognized the other three invasion of privacy torts, but citing *Brown*, 483 S.E.2d at 484 to note that South Carolina has failed to recognize the fourth, false light).

The issue the parties ask the Court to resolve is whether such cases constitute a rejection of a false light cause of action, or whether South Carolina would recognize the tort if presented with the cause of action in a meritorious case.

The Court is unprepared to resolve this issue or dismiss Gregg's false light claim at this juncture. Defendants fail to address whether Gregg's facts present a colorable false light claim, assuming the cause of action did exist. The Court will revisit this issue at the summary judgment stage of this matter. Therefore, it will deny the motion to dismiss as to Gregg's false light claim and dismiss without prejudice the motion to certify.

### F. *Whether the Court should dismiss Gregg's IIED claim*

Defendants contend Gregg has failed to sufficiently plead the second and fourth elements of an IIED claim. Gregg counters that his amended complaints states facts adequate to survive a motion to dismiss.

Under South Carolina law, an IIED claim requires the plaintiff to show:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result for his conduct;

> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;
> (3) the actions of the defendant caused by the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was severe so that no reasonable [person] could be expected to endure it.

*Bass v. South Carolina Dept. of Social Services*, 780 S.E.2d 252, 260–61 (S.C. 2015) (internal quotation marks omitted). The South Carolina Supreme Court mandates a "heightened burden of proof" with respect to the second and fourth elements of an IIED claim. *Id.*

### 1. Whether Gregg has alleged Defendants conduct was extreme and outrageous

Defendants maintain its conduct fails to rise to the level of extreme and outrageous, because they were merely addressing reactions to comments its members found offensive. Gregg contends Defendants' conduct was atrocious and intolerable in a civilized society because they "'rushed' in 'high heat' to assassinate Dr. Gregg's impeccable professional reputation." Dismissal Response at 27 (quoting Amended Complaint ¶ 92).

To satisfy the second element of IIED, Gregg must show Defendants' "conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community[.]" *Bass*, 780 S.E.2d at 260–61 (internal quotation marks omitted).

For the purposes of a motion to dismiss, Gregg's allegations in the amended complaint suffice as to this element, even considering the heightened burden of proof Gregg will face in this case.

Gregg has therefore adequately pled the second element of IIED.

13

### 2. *Whether Gregg has alleged he suffered sufficiently severe emotional distress*

Defendants insist Gregg's amended complaint fails to do more than recite the fourth element of an IIED. Gregg maintains he has alleged specific facts to support his claim as to this element.

The fourth element of an IIED claim requires "the emotional distress suffered by the plaintiff be severe so that no reasonable [person] could be expected to endure it." *Id.*

Gregg alleges more than that his emotional distress is severe. Instead, he states his emotional distress has caused stress, sleeplessness, and even physical injury.

For the purposes of a motion to dismiss, Gregg has sufficiently pled the fourth element of IIED, even with the heightened burden of proof. The Court will therefore deny the motion as to Gregg's IIED claim.

### G. *Whether the Court should dismiss Gregg's breach of contract cause of action*

The parties agree Illinois law should apply to Gregg's breach of contract claim. *See Livingston v. Atl. Coast Line R.*, 180 S.E. 343, 345 (S.C. 1935) ("Matters connected with [a contract's] performance are regulated by the law prevailing at the place of performance.").

Under Illinois law, the elements of a breach of contract action are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016). Defendants challenge the third and fourth elements only, so the Court focuses only on those two elements in this order.

### 1. *Whether Gregg has alleged Defendants breached the contract*

Defendants posit Gregg's breach of contract claim fails because the video statement and written press release failed to constitute "censure" or "discipline," under ACMG's bylaws, and

14

thus Gregg has failed to allege they breached the contract.  Gregg counters that when he has pled facts sufficient to allege Defendants actions constituted breach.

As the Court noted above, the ACMG bylaws—the contract at issue—allow the Board of Directors to "censure, suspend, expel, or otherwise discipline any member found to . . . be deficient in moral character . . . be guilty of professional misconduct, or . . . have acted in a manner prejudicial to the interests of [ACMG]."  Bylaws at 23 § 8.2.  The bylaws also set forth a set of disciplinary procedures, including reference to a three-person inquiry committee, "thorough and impartial consideration," a written report, notice to the member, and a vote.  *Id.* § 8.3.

The bylaws fail to define "censure" or "otherwise discipline."  Defendants cite Black's Law Dictionary, which defines censure as "an official reprimand or condemnation; an authoritative expression of disapproval or blame; reproach[.]"  Censure, Black's Law Dictionary (11th ed. 2019).  Likewise, it defines disciplinary action as "a measure taken by someone in authority to punish or curb behavior that does not meet or confirm to communicated and expected standards of performance."  Disciplinary Action, Black's Law Dictionary (11th ed. 2019).

For the purposes of this motion, the Court will use these definitions, although to the extent the terms of the Bylaws are ambiguous, a finder of fact will ultimately resolve the issue.  *See Richard W. McCarthy Trust Dated September 2, 2004 v. Illinois Casualty Co.*, 946 N.E.2d 895, 903 (Ill. App. Ct. 2011) ("[W]hen the contract term in question is ambiguous, a question of fact exists, which must be determined by the trier of fact[.]").

Gregg has pled that the video statement and the written press release came from ACMG's president and CEO and were thus official.  Gregg has also pled that the video statement and the written press release denounced his comments, and thus constitute a condemnation, reproach, or official disapproval.  He has thus stated a claim that the video statement and the written press

15

release constituted censure. The Court thus need not consider whether the statements may have also constituted disciplinary action. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

Because he has also pled that Defendants failed to employ the required procedures before imposing the alleged censure, Gregg has adequately alleged the third element—breach.

### 2.     *Whether Gregg has alleged damages*

Defendants also contend Gregg has failed to allege that any breach resulted in injury. Gregg fails to directly address this argument.

Defendants point out that Gregg is still a dues-paying member of ACMG. They also claim their actions "played no role" in Gregg's resignation from his position as president. Dismissal Motion at 21. Finally, they maintain that although Gregg pled he must disclose the matter if asked on employment applications, he failed to plead any affirmative requirement to report the incident, nor that he has been asked about it on any applications.

Gregg maintains Defendants claim that his resignation was unprompted "borders on the absurd[.]" Dismissal Response at 9. He avouches Defendants "lit the fire that sullied Dr. Gregg's reputation, subjected him to ceaseless social and personal vitriol, and made his continuance in a leadership role virtually impossible." *Id.*

As such, for the purposes of this motion, Gregg has adequately alleged that Defendants' alleged breach of contract resulted in injury to him. He has thus pled the fourth element of the cause of action, damages. The Court will thus refrain from dismissing Gregg's breach of contract cause of action.

16

### H. Whether the Court should dismiss Gregg's request for treble damages and attorney fees

Finally, Defendants posit that the Court should dismiss Gregg's request for treble damages and attorney fees because Gregg fails to state a basis for either remedy. Gregg fails to respond to this argument.

Each of Gregg's causes of action arise under common law. "In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees." *Seabrook Island Prop. Owners' Ass'n v. Berger*, 616 S.E.2d 431, 434 (S.C. Ct. App. 2005) (internal quotation omitted); *see also Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 321 (Ill. App. Ct. 2002) (applying the same rule under Illinois law).

Likewise, common law fails to provide a basis for treble damages. *See O'Shields v. Columbia Automotive, LLC*, 867 S.E. 2d 446, 458 (S.C. Ct. App. 2021) (explaining treble damages and attorney fees arise under statute, but punitive damages may arise under common law); *City Messenger of Hollywood, Inc. v. City Bonded Messenger Serv., Inc.*, 254 F.2d 531, 534 (7th Cir. 1958) (holding treble damages unavailable for Illinois-law breach of contract claim).

As Gregg has failed to identify a basis for asserting treble damages and attorney fees, the Court will grant the motion to dismiss as to these requests, and dismiss them without prejudice. But, Gregg may amend his complaint within two weeks of this order to state a plausible claim for such damages.

### V. CONCLUSION

For the reasons stated above, it is the judgment of the Court Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** and Gregg's motion to certify is

**DISMISSED WITHOUT PREJUDICE**.  Gregg's request for treble damages and attorney fees is **DISMISSED WITHOUT PREJUDICE**.  The stay in this matter is **LIFTED**.  Within ten days of this order, the parties shall confer and submit a joint proposed amended scheduling order.

   **IT IS SO ORDERED.**

Signed this 16th day of February 2023, in Columbia, South Carolina.

                s/ Mary Geiger Lewis
                MARY GEIGER LEWIS
                UNITED STATES DISTRICT JUDGE